CHARLES CATANIA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Catania v. Commissioner
Docket No. 20808-84.
United States Tax Court
T.C. Memo 1986-437; 1986 Tax Ct. Memo LEXIS 167; 52 T.C.M. (CCH) 472; T.C.M. (RIA) 86437; September 15, 1986. B. Mahlon Brown, for the petitioner. Kenneth A. Burns, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In a statutory notice dated April 5, 1984, respondent determined a deficiency in petitioner's income tax for 1980 in the amount of $5,684.19 and an addition to tax under section 6653(a) [1] in the amount of $284.21. [2]
After concessions, *168 the only issue remaining for decision is whether petitioner failed to comply with respondent's toke compliance program and, if so, whether the failure relieves respondent of his obligations to petitioner. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner resided in Las Vegas, Nevada, at the time he filed his petition. His income tax return for 1980 was filed with the Internal Revenue Service Center at Ogden, Utah. Petitioner admits that on the return for 1980 he did not report all of the toke income he received during the year as a twenty-one dealer at Caesar's Palace (Caesar's). During 1981, respondent instituted in Nevada a toke compliance program in an attempt to stop a tax loss estimated to be in excess of $100,000,00 per year from the failure of casino dealers to fully and accurately report their toke income. The program was designed to conserve respondent's Nevada audit resources while achieving an increase in the compliance by the dealers with the tip reporting requirements of the Internal Revenue Code. In general terms, under the discretionaryprogram, *169 the Service agreed not to audit a dealer's pre-1982 returns if the dealer fully participated in the program. On October 15, 1981, the local examination group manager for respondent sent a letter to all of Caesar's dealers, including petitioner, informing them of the toke compliance program. The pertinent provisions of the letter are set out below: In September of this year, Internal Revenue Service initiated a payroll tax audit of your employer's tax return. Your employer was required by law to provide the information requested in connection with this payroll tax audit. As in any normal audit, the procedures included a review of the payroll records of all employees including dealers. It is the intention of the Service to use information gathered not only for a determination of the correct payroll tax of your employer, but also for the conduct of a dealers' toke project. In the alternative, the Internal Revenue Service is willing to enter into an agreement with Caesar's Palace Dealers whereby current compliance with the tax laws can be achieved without conducting a toke project. You will not be audited if you agree to begin currently reporting 100 percent of your tokesunder *170 an acceptable plan. Examples of acceptable plans are as follows: * * * PLAN FOR DEALERS WHO DO NOT POOL TOKES, SUCH AS POKER AND CRAPS DEALERS OR DEALERS WHO POOL VOTE NOT TO ADOPT A REPORTING SYSTEM FOR THE GROUP: You would be allowed to report your tips individually.The individual method requires the reporting of toke income on a monthly basis to the IRS. The law requires that if you make more than $20 per month in tokes that you report them to your employer by the 10th of the following month. If you would be uneasy about reporting your tokes to your employer because of peer pressure, you may report to us and make quarterly estimated tax payments. If you do not pool tokes or the dealers in your casino do not accept a group reporting system by the compliance date, contact the IRS at 385-6362 if you want to comply. Upon notice to the IRS of your participation in either method of current compliance, you will receive a letter from the District Director stating that in return for current compliance, the Internal Revenue Service will not start an audit of your tax return for toke income for 1978, 1979, 1980 or 1981 from January 1, 1981 through the date when 100 percentreporting *171 starts. The tax savings are significant. The estimated average deficiency and penalties for any given year are over $5,000.00 [sic] per year. If current compliance is not achieved, the Internal Revenue Service will be forced to pursue and information gathering project to determine toke income for past and current years. * * * We will be holding meetings for the dealers from your hotels to discuss this proposal. You may attend whichever meeting is more convenient for you. If you have any questions, you may ask them at the meeting or call us at 385-6362. Our primary goal is current compliance. Subsequently, Caesar's dealers received a second letter from respondent's acting group manager which stated in pertinent part as follows: You were among the dealers at several hotels contacted by the Internal Revenue Service in 1981 regarding the dealer toke compliance plan. The deadline to enter into the plan on an individual basis was December 10, 1981. Many dealers have informed the Internal Revenue Service that there was confusion among the dealers because they had received conflicting information and therefore, they did not realize that December 10th was the lastday they *172 could enter into the compliance plan on an individual basis. Although group compliance systems could be instituted after December 10th, many dealers have informed us that they could not get a majority of dealers organized to start a group system. Since many dealers who may have wanted to enter the compliance plan may have been unable to do so, the Internal Revenue Service has decided to allow dealers who want to enter into the compliance plan to do so until April 14, 1982. You may accept the compliance plan through a majority group, a minority group, or on an individual basis. To receive the compliance letter from the District Director, you must inform the Internal Revenue Service of your intention to comply as detailed below. * * * Individual Compliance System
If you want to enter an individual compliance plan, send a letter stating your desire to comply to the Internal Revenue Service. The letter must be postmarked by midnight, April 14, 1982. Send the letter to: Internal Revenue Service, Toke Project Group, Caller Box 16045, Las Vegas, NV 89101 Include your name, address, social security number, the casino you work at and the game you deal. You willbe required *173 to do the following things in connection with an individual compliance plan: 1. Maintain a monthly record of your tokes on a daily basis and submit that record to the Internal Revenue Service each month for 24 months. 2. Report all of your toke income to your employer each month as required by the Internal Revenue Code. You must report your toke income from January 1, 1982 forward. When you receive your compliance letter from the District Director, you will receive more complete details about the requirements of the individual plan, as well as the forms to fill out. The Internal Revenue Service will not audit your prior year tax returns for toke income as long as you report all your toke income from January 1, 1982 forward under an acceptable compliance plan. If you want to enter a compliance plan, you must contact the Internal Revenue Service as described above by April 14, 1982. If you decide not to enter into a compliance plan, your prior year tax returns will not be exempt from audit for toke income. After petitioner had indicated to respondent by telephone that he wished to participate in the program, he received from respondent's district director acompliance letter *174 which stated: In consideration of 100 percent compliance with the employee "toke" reporting requirements of the Internal Revenue Code, the Internal Revenue Service agrees to refrain from initiating any form of examination activity for toke income against you for all open years prior to January 1, 1982, the effective date of this agreement. The term "all open years" includes all individual income tax returns upon which the statute of limitations has not yet expired. This "open year" period includes the period January 1, 1981, through December 31, 1981. In consideration of the Internal Revenue Service not initiating any form of examination activity for toke income, you agree to comply fully with the toke reporting requirements of the Internal Revenue Code. The reporting of your toke income through an approved system indicates your acceptance of this agreement. The compliance letter received by petitioner from respondent's district director was not accompanied by the forms, or calendars, on which petitioner was expected to make the monthly reports of his toke income to respondent; and even though he made at least one request for such forms before the end of1981, he never received *175 the forms. As a result, he did not make any monthly reports to respondent. However, from January through May of 1982 he fully and accurately reported all of his toke income to Caesar's but made no such reports after May of 1982. On April 13, 1984, petitioner filed a 1982 income tax return which contained all of his toke income for that year. On the same date he filed a return for 1983 which contained all of his toke income for that year. In the administration of the toke program, the 1982 reports and returns of dealers who failed to comply with one or more of the program requirements were examined by respondent's agents on a case by case basis in order to determine whether their compliance was sufficient to forego an audit of their returns for prior years. In these determinations, minor deviations by dealers in making monthly reports to their casinos or to respondent were ignored by respondent's agents. In the administration of the program, respondent also adopted the practice of permitting a dealer to amend his or her 1982 tax return if their toke income had not been fully reported on the original return, but only if they filed the amended return for1982 prior to December 31, 1983. *176 However, petitioner and other non-complying dealers were not advised of these practices and petitioner made no attempt to file his original return until April 13, 1984, which was approximately a week after respondent had mailed the notice of deficiency on April 5, 1984. In the notice, respondent determined that petitioner's toke income for 1980 had been underreported by $17,843.75. OPINION Petitioner claims that with the filing of the return for 1982 which contained all of his toke income he complied with respondent's program and, therefore, he should be relieved from his 1980 tax liabilities. Respondent contends that petitioner failed to comply with either the letter or the intent of the agreement and that the delinquent filing of the 1982 return did not bring him into compliance with the program. Petitioner has the burden of proof. , Rule 142(a). Respondent's letters to Caesar's dealers clearly state that in order to comply with the program each dealer would be required to: (1) affirmatively accept the program by the deadline established for Caesar's; (2) completely and accuratelyreport to the Internal Revenue *177 Service on a monthly basis all tokes received by him on or after January 1, 1982; and (3) report all tokes received to Caesar's on a monthly basis as required by section 6053(a). In addition to the above specific terms, respondent asserts that petitioner was also informed that under the program he was required to fully and accurately report all toke income on his tax returns. Petitioner's argument to the contrary is contradicted by the testimony of other dealers. In any event, the full and accurate reporting of taxable income is required of all taxpayers, whether or not covered by the compliance program. Petitioner admits that he failed to report any toke income to Caesar's for seven months in 1982 and that he made no monthly reports of such income to respondent. He further admits that the return for 1982 containing all of his toke income was not filed until after he had received the deficiency notice for 1980. It is apparent, therefore, that even if we overlook his failure to make monthly reports to respondent because he was not furnished with the necessary forms, petitioner still failed to comply with substantially all of his obligations underthe toke program. Petitioner *178 contends, however, that even if he failed to comply with the terms of the program respondent should be prohibited from auditing his pre-1982 returns. First, petitioner insists that respondent's toke program amounted to an amnesty under which he acquired certain absolute rights that are not subject to forfeiture in the absence of clear and unequivocal language setting forth the conditions of forfeiture. Respondent, on the other hand, argues that his toke program was nothing more than administrative management of available resources. From our examination of the entire record, we can find no evidence which indicates that respondent ever presented the toke program as a tax amnesty. Furthermore, even if it were presented as a tax amnesty, we are satisfied that petitioner's obligations under the toke program were clearly and unequivocally stated as pre-conditions to respondent's obligations under the agreement. Secondly, petitioner argues that respondent's failure to give him notice of his audit criteria for noncomplying dealers was in violation of his constitutional right to due process. In reply, respondent contends that he was under no duty to notifynoncomplying dealers of the time *179 within which they would be permitted to file correct returns, nor was he required to give noncomplying dealers a hearing to determine if they should be audited. It is well settled with with exceptions we will not go behind a notice of deficiency to examine the motives, administrative policies, or procedures of respondent in making a determination. ; ; . The rationale for such conclusion being that a trial before this Court is a proceeding de novo and our determination must be based upon the merits of the case as presented here and not upon a record previously developed at the administrative level. . A recognized exception to this rule is that where there is substantial evidence of unconstitutional conduct on the part of respondent's agents the integrity of our judicial process would be impugned if we permitted respondent to benefit from the unconstitutionalconduct. See . *180 In this case, however, petitioner has failed to make a showing that his constitutional rights have been violated. Due process does not require respondent to use any particular method in selecting taxpayers for audit. The broad mandate to investigate and examine persons who may be liable for taxes vests in respondent the discretion to determine which taxpayers can and should be audited with the resources available to respondent. . Nor can we agree with petitioner's assertion that lack of written notice with respect to respondent's audit criteria denied him due process. The Constitution's due process requirements are satisfied where an "adequate opportunity is afforded for a later judicial determination of the legal rights" involved. . That requirement is satisfied by petitioner's right to a trial in this Court. Finally, petitioner argues that his constitutional right to the equal protection of the law has been violated because other noncomplying dealers werepermitted by respondent to avoid audits for 1980 and 1981 by simply filing *181 amended returns for 1982.Here again, it is the well-established position of this Court that our responsibility is to apply the law to the facts of the case before us and to determine the correct tax liability of the particular taxpayer or taxpayers involved. How the Commissioner may have treated other taxpayers has generally been considered irrelevant to our decision. See , and the cases cited therein; see also . Furthermore, even the conscious exercise by respondent of some selectivity in enforcement is not in and of itself a constitutional violation of equal protection if the selection is not based on impermissible considerations such as race, religion, or other arbitrary classifications. . Petitioner also argues that respondent's audit discriminated against him in particular. To prevail in this ground, petitioner must meet two requirements. First, he must demonstrate that, while others similarly situated have not been selectedfor audit even though engaged in conduct of the type forming the basis *182 of the tax deficiencies against him, he was singled out for tax audit and a deficiency determination. Second, he must demonstrate that the Commissioner's discriminatory selection of him was based upon impermissible considerations such as race, religion, or the desire to prevent his exercise of constitutional rights. ; ; ; ; ; . Respondent asserts, and petitioner has failed to present any evidence to the contrary, that only those dealers who filed correct original or amended 1982 returns before the commencement after December 31, 1983 of audit proceedings for the years prior to 1982 were considered to be in compliance with the toke program. It was only those dealers, like petitioner, who failedto fully report by December 31, 1983, their 1982 toke income by a correct *183 original or amended return, that were selected for audit in the prior years. Consequently, petitioner has failed to establish that he was not treated by respondent in the same manner as all other dealers in his position were treated by respondent. Therefore, his asserted constitutional right to the equal protection of the law was not denied. We conclude, therefore, that petitioner failed to comply with the terms of the toke compliance agreement, and respondent had no obligation to refrain from auditing the 1980 tax return. To reflect the foregoing, as well as concessions made by the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
2. The parties have stipulated that the deficiency for 1980 shall be $5,000.00 and the addition to tax $250.00 in the event this Court rules that petitioner is not relieved of his 1980 tax liability.↩